Steven Glenn PAYNE, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–83–023–CR.

Court of Appeals of Texas,
Austin.

March 28, 1984.

David Spencer, Dick Blankenship, Austin, for appellant.

Ronald Earle, Dist. Atty., Lawrence A. Russell, Asst. Dist. Atty., Austin, for appellee.

Before SHANNON, POWERS and BRADY, JJ.

SHANNON, Justice.

Steven Glenn Payne appeals from a judgment of conviction for murder after a jury

trial in the district court of Travis County. The jury assessed punishment at confinement for ten years. This Court will affirm the judgment of conviction.

The district court denied appellant's requested charges on involuntary manslaughter, voluntary manslaughter, and criminally negligent homicide. The district court's refusal to submit those charges is the foundation for appellant's primary appellate complaint.

The district court admitted into evidence appellant's written confession. That writing shows that he worked at the Okey-Dokey nightclub as night manager. To function at that job he had been using "pills and alcohol." Early in the morning of March 7, 1981, appellant departed the Okey-Dokey nightclub, but he returned to the club to obtain a telephone number. After using the telephone, appellant began conversing with the club's bookkeeper, Carol Ellen Rosenbaum, who was counting the night's receipts.

After a time, the pair commenced an argument stemming from the bookkeeper's taunt about appellant's promiscuous sexual conduct and his recent bout with venereal disease. The argument escalated into a shouting match as she and appellant traded verbal insults. Carol Rosenbaum then tried to slap appellant, but only grazed his face. After a struggle, appellant handcuffed the woman as he held her down. While shackled, she continued to heap verbal abuse upon appellant. Appellant forced the manacled woman through the club and into the kitchen where she broke away from him, screaming threats. Appellant stated in the confession that "[she] told me that she was going to get somebody to whip my a_____ or kill me or something. She said that I'll make you sorry that you were ever born." As she was running, Miss Rosenbaum slipped and fell, hitting her chin. She then began crying and did not get up.

Appellant returned to the kitchen, and upon seeing a mop bucket "it went thorugh [sic] my mind that I could make her say that she was sorry for all of the things that she said to me." According to Payne's confession, he "was in such a rage" but he "didn't want to hurt anybody." Appellant filled the mop bucket with water and then approached the victim demanding a retraction and an apology for her remarks. Instead of an apology, Miss Rosenbaum continued to swear and threaten appellant. When appellant seized her by the hands and arms, she continued to kick and curse. In the confession, appellant stated "the more she did [kick and curse] the madder I got." Appellant then began dunking Carol Rosenbaum's head into the mop bucket, holding her head under water. When he raised her head from the bucket, she continued to threaten, curse, and kick at appellant. He submerged her head once again in the mop bucket. According to appellant he did not hold her head under water "very long," but when he raised her head up, she was no longer maligning him. Instead, she was dying.

At that point, appellant by his own admission, realized that he "had gone too far." "I knew that she was dead, and I looked at her and I told her that I was sorry that she wasn't supposed to be dead. She just made me so mad."

At trial, appellant disavowed the confession and tried to explain why he signed it. Appellant testified further that he was not present at the Okey-Dokey when the victim died. He claimed, instead, that he was at home.

■ Appellant contends that the offenses of voluntary manslaughter, involuntary manslaughter, and criminally negligent homicide were raised by the evidence and hence these charges should have been submitted to the jury. Appellant refers the Court to the familiar rule that if there is evidence from any source raising the lesser-included offense, the trial court should submit the charge on the lesser-included offense. *Schoelman v. State,* 644 S.W.2d 727 (Tex.Cr.App.1983); *Day v. State,* 532 S.W.2d 302 (Tex.Cr.App.1975); *Christian v. State,* 71 Tex.Cr.R. 566, 161 S.W. 101 (1913). The charge is required to be submitted even though that evidence

may be "strong, feeble, impeached or contradicted." *Campbell v. State*, 614 S.W.2d 443, 445 (Tex.Cr.App.1981); *Warren v. State*, 565 S.W.2d 931 (Tex.Cr.App.1978). An accused's testimony is sufficient to require submission of the lesser-included offense. *Jackson v. State*, 548 S.W.2d 685 (Tex.Cr.App.1977).

Texas Pen.Code Ann. § 19.04 (1974) defines voluntary manslaughter and provides in part:

(a) A person commits an offense if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause.

(b) "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

(c) "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

■ The nub of the voluntary manslaughter offense is that the killing was committed "under the immediate influence of sudden passion arising from an adequate cause." *McCartney v. State*, 542 S.W.2d 156, 160 (Tex.Cr.App.1976). The evidence was that Miss Rosenbaum's conduct toward appellant kindled his rage. Nevertheless, this Court has concluded that there was no evidence that the victim's drowning was committed by appellant "under the immediate influence of sudden passion arising from an adequate cause." The victim met her death as appellant's helpless captive. She had been immobilized by handcuffing and led by appellant through the nightclub to the kitchen. She had attempted to escape and her will to physically resist appellant doubtless had been diminished by her fall and injury. After reflection, appellant determined to immerse the victim in the mop bucket until she retracted her villifications. In drowning Miss Rosenbaum, appellant did not act under the immediate influence of sudden passion, but rather the scheme to reduce her to acquiescence was planned and deliberate. He intentionally embarked upon a course of conduct designed to compel his victim to forswear the vile names which she had called him.

In addition, this Court is convinced that there is no evidence that appellant's rage arose from *adequate cause*. It is true that Miss Rosenbaum slapped at appellant and that the pair had engaged in a scuffle. Those facts may have been evidence of adequate cause at or near the time of occurrence. *Pennington v. State*, 644 S.W.2d 64 (Tex.App.1982, pet. granted). Nevertheless, there followed a span of time during which Miss Rosenbaum, while pinioned, was under appellant's complete dominion and control. It was during this time that appellant conceived the plan to force retraction which ended in the woman's death.

■ We now examine appellant's contention that the district court should have submitted a charge on involuntary manslaughter and criminally negligent homicide. A person commits involuntary manslaughter if he recklessly causes the death of an individual. Tex.Pen.Code Ann. § 19.-05(a)(1). Section 6.03 of the Texas Penal Code further explains the term "recklessly":

(c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex.Pen.Code Ann. § 6.03(c).

■ Criminally negligent homicide is committed when one causes the death of

another person by criminal negligence. Tex.Pen.Code Ann. § 19.07. Criminal negligence is defined in Tex.Pen.Code Ann. § 6.03(d) as:

"A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."

■ This Court has concluded, finally, that the district court did not err in refusing to submit a charge on involuntary manslaughter or criminally negligent homicide for the reason that the evidence claimed to raise those offenses established also that appellant was guilty of murder. Appellant, accordingly, failed to establish that if guilty, he was guilty only of a lesser-included offense.

Evidence relied upon by appellant to raise the lesser-included offenses of involuntary manslaughter and criminally negligent homicide also established murder pursuant to Tex.Pen.Code Ann. § 19.02(a)(2). *Harrell v. State*, 659 S.W.2d 825 (Tex.Cr. App.1983).

Texas Pen.Code Ann. § 19.02(a)(2) provides in part:

(a) A person commits an offense [of murder] if he: ...

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual;

Tex.Pen.Code Ann. § 1.07(a) defines the term "serious bodily injury":

(34) "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

In his confession, appellant admitted that he forced his victim's head into the mop bucket several times, and he further acknowledged that he held her head under water to force a retraction. At trial appellant denied the veracity of the confession, but argued to the district court that if the confession constituted any evidence it was evidence of voluntary manslaughter, involuntary manslaughter, or criminally negligent homicide. In support of the submission of charges on involuntary manslaughter and criminally negligent homicide, appellant refers to statements in the confession demonstrating that he only intended to force Miss Rosenbaum to withdraw her slurs. He claimed that he did not intend to kill her. His statements do not constitute evidence that if guilty, appellant was guilty *only* of involuntary manslaughter or *only* of criminally negligent homicide; to the contrary his statements also constitute evidence that he was guilty of murder pursuant to Tex.Pen.Code Ann. § 19.02(a)(2).

Appellant's statements establish that he intended to cause "bodily injury that creates a substantial risk of death or that causes death, ...." Tex.Pen.Code Ann. § 1.07(a)(34). Furthermore, appellant's confession constitutes evidence that he committed an act clearly dangerous to human life, and that such conduct resulted in Miss Rosenbaum's death. Because the statements upon which appellant relied to raise the lesser-included offenses of involuntary manslaughter and criminally negligent homicide also constitute evidence of murder under Tex.Pen.Code Ann. § 19.02(a)(2), it was not error for the district court to refuse to submit the requested charge on the lesser-included offenses. *Harrell v. State, supra.*

The judgment of conviction is affirmed.

POWERS, Justice, concurring.

Believing that appellant's grounds of error require an analysis different from that of the majority, I offer the following.

Appellant's custodial statement is to the effect that appellant and the victim, Carol Rosenbaum, engaged in heated oral argu-

ment in the Okey Dokey Club. According to his statement, appellant called Rosenbaum a "whore." The statement continues:

Thats [sic] when she took a swing at me and tried to slap me. She barely grazed my face. As I ducked I grabbed her hands, and held her. I told her just to shut up and leave me alone. She said something like, you sorry ... let me go or I'm going to knock the ... out of you. I told her just to shut up. She was continually cussing at me and kicking at me so I just wrestled her to the floor asking her to shut up and not to call me names.

I took my handcuffs out of my left rear pocket, but before I cuffed her I told her that if she didn't shut up, *I was going to shut her up.* She just kept cussing and yelling at me and calling me names. *So I put the handcuffs on her. I got her up off of the floor and took her out through the club and into the kitchen.* Before we got into the kitchen, *she broke away* from me, and told me that she was going to get somebody to whip my ... or kill me or something. She said that I'll make you sorry that you were ever born. *She was running back toward the office and slipped and fell down the one step from the wooden area into the pool table area.* She fell down on her face and hit her chin. She started sobbing and rolled over, *but she wasn't getting up. I went back into the kitchen* and I saw the mop bucket in the mop sink, and *it went thorugh* [sic] *my mind that I could make her say that she was sorry* for all of the things that she said to me. *I was in such a rage, I didn't want to hurt anybody. I filled up the mop bucket and started out to the kitchen with it. She was just starting to get up on her knees.* I came out and I told her to say that she didn't mean any of those things, just to say that she was sorry. All she said was that I was going to pay for this and called me more names and cussed me some more. I grabbed her by the hands and the arms and told her to say that she was sorry. *But she just kept on kicking at me and cussing me,*

*and the more she did the madder I got. She was still on her knees and I began to dunk her head into the mop bucket.* I held her head under then I pulled it up but she kept on screeming [sic] and cussing at me. She called me a whore, and said that I was filthy and I dunked her head again. She said that I wouldn't get away with it and that she was going to get me. *I put her head back in the mop bucket and held it there.* It didn't seem like very long, but when I picked her head back up she wasn't cussing me any more. She was gagging and coughing. *Then she just stopped, and was real still.* Her eyes were open looking up at me, they were just open a little and she wasn't saying anything. I laid her over on her back near the mop bucket and just looked at her. *I remember thinking that I had gone too far and that she was dead.* While I was dunking her, she was kicking and fighting and most of the water in the mop bucket got on her front down to her knees and all over the carpet. As I looked down on her after I laid her on her back I asked her just to say that she was sorry. She didn't say anything, she didn't move. I knew that she was dead, and I looked at her and *I told her that I was sorry that she wasn't supposed to be dead. She just made me so mad....*

    \*    \*    \*    \*    \*    \*

*I took the life of Carol Rosenbaum but I never intended to hurt Carol* and I hope people can forgive me for what I've done.

(emphasis added).

The confession is crystal clear on the point that Rosenbaum's death resulted from appellant's voluntary acts. Appellant does not contend otherwise. The issue then reduces to the mental state with which appellant acted. Here, as in most cases, the issue is one of circumstantial evidence.

The jury found that appellant "intentionally and knowingly" caused the death of Rosenbaum "by asphyxia due to drowning

her in a mop bucket," as alleged by the State in its indictment. Although appellant asserts no ground of error contending otherwise, we note that the evidence is sufficient for the jury to conclude beyond a reasonable doubt that appellant acted with the culpable mental state required for murder. Tex.Pen.Code Ann. § 19.02(a)(1) (1974). We note particularly those portions of appellant's confession which are to the effect that Rosenbaum was handcuffed and injured when appellant began to dunk her head in the mop bucket, that appellant was at the time "in such a rage," that the more she kicked and "cussed" at appellant, "the madder [he] got," that he then "put her head back in the mop bucket and held it there," that he thought, on seeing that she was dead, that he "had gone too far," and that he determined to use the mop bucket, in the manner described, *after* the first encounter with Rosenbaum, *after* he saw she was not getting up from her fall, *after* he saw the bucket in the mop sink, *after* he filled the bucket with water, and *after* he returned to the area of the club where Rosenbaum lay. *See, e.g., Brown v. State,* 508 S.W.2d 91 (Tex.Cr.App.1974) (evidence sufficient to sustain conviction for murder with malice where defendant repeatedly struck 22-month-old child, causing child to fall and strike her head, the "relative size and strength of the parties, the manner of the attack, and the extent to which it was carried," all being proper considerations for the jury in determining whether defendant acted with an intent to kill the child. *Id.* at 96.); *Sowell v. State,* 503 S.W.2d 793 (Tex.Cr.App.1974) (evidence sufficient to support inference of an intent to kill where seven-year-old child was strangled to death with a belt, where expert testimony showed that death would have required three to five minutes of constant pressure with the belt, and where defendant's statement, admitted in evidence, was to the effect that she struggled with the child when he grabbed the belt as she attempted to whip him in an effort to make him eat his breakfast, and that she buried the child on her father's premises); *Hunter v. State,* 468 S.W.2d 96 (Tex.Cr.App.1971) (evidence sufficient for jury to infer an intent to kill, in prosecution for assault to commit murder with malice, where it was shown that defendant drove his automobile for a period of time at speeds of 30 to 40 miles per hour while victim clung to open door of the car, from which she ultimately fell causing her to suffer a broken hip and a skull fracture).

Instead of attacking the sufficiency of the evidence to support the jury's findings that appellant intentionally and knowingly caused the death of Rosenbaum, he contends that certain statements in his confession, introduced by the State, constituted evidence of certain lesser offenses, because those statements imply that he acted with *a different mental state* than that required for murder. Appellant refers to those parts of his confession which are to the effect that he only wanted to make Rosenbaum say she was sorry for her statements, that he "didn't want to hurt anybody," that "she wasn't supposed to be dead," and that he "never intended to hurt [her]." Appellant assigns as error, therefore, the trial court's failure to charge the jury on voluntary manslaughter, involuntary manslaughter, and criminally negligent homicide, each of which requires a culpable mental state implied in such statements, in appellant's view of those statements.

One should first observe that appellant's confession contains nothing which expressly *denies* that he intentionally and knowingly caused Rosenbaum's death by drowning her. Rather, appellant's statements are to the effect that he did not want to *hurt* her at any particular time in the episode. Nevertheless, the statements are susceptible of an inference that appellant generally *denied* acting at any time with an intent to kill Rosenbaum, which is, of course, consistent with his plea of not guilty and the presumption of his innocence.

While sufficient to raise an inference that appellant *denied* acting with an intent to kill, the statements relied upon by appellant do not, in my view, *affirmatively suggest* any inference that he acted with a

culpable mental state required for the lesser offenses which appellant contends should have been included in the charge of the trial court. The trial court was not required so to instruct the jury *unless* appellant's statements constituted evidence of such *other* mental states, that is, the culpable mental states required to convict for (1) voluntary manslaughter, (2) involuntary manslaughter, and (3) criminally negligent homicide.

I would hold with the majority that the statements abstracted from appellant's confession, and relied upon by him as constituting evidence of the culpable mental states required for the lesser offenses, are not sufficient in that regard.

The culpable mental state required to raise voluntary manslaughter is described as causing death "under the immediate influence of *sudden* passion arising from adequate cause." Tex.Pen.Code Ann. § 19.04 (1974). This mental state is not implied in appellant's confession. The confession shows that the emotion suggested by appellant arose first in the *initial* stages of his encounter with Rosenbaum; that appellant handcuffed Rosenbaum; that she fled, fell, and injured herself while handcuffed; that appellant *left* her, entered the kitchen where he saw the mop bucket and *then* determined to use the bucket to extract an apology from Rosenbaum; that he *then* filled the bucket and returned to where Rosenbaum lay; that he *then* placed her head twice under water, and then a third time, because she continued until the last to scream and curse at appellant. These facts, when taken as true, imply in their totality a course of conduct by appellant based not upon emotion but upon reflection and decision, with opportunities therefor. While Rosenbaum's conduct may have understandably caused in appellant an emotional response, under the circumstances shown by his confession, his emotion at the time he began placing her head in the bucket cannot be said to be "sudden." *Hobson v. State*, 644 S.W.2d 473 (Tex.Cr.App.1983). Moreover, appellant's response to the asserted provocation by Rosenbaum was not, as a matter of law,

that of an ordinary person and cannot, therefore, be said to issue from "adequate cause." *Ayers v. State*, 606 S.W.2d 936 (Tex.Cr.App.1980); *McCartney v. State*, 542 S.W.2d 156 (Tex.Cr.App.1976).

The culpable mental state required to raise involuntary manslaughter, or the reckless causing of death, under § 19.05 of the Penal Code, is defined as follows:

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex.Pen.Code Ann. § 6.03(c) (1974).

At best, appellant's statements deny an intent to kill. Nothing in the confession implies that appellant was (1) aware of the risk of drowning and that he (2) *consciously* disregarded that risk. The confession is merely silent in that regard and therefore did not raise the issue of involuntary manslaughter. *Simpkins v. State*, 590 S.W.2d 129 (Tex.Cr.App.1979).

The culpable mental state required to raise the offense of criminally negligent homicide, or the causing of death by criminal negligence, under § 19.07 of the Penal Code, is defined as follows:

A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exer-

cise under all the circumstances as viewed from the actor's standpoint.

Tex.Pen.Code Ann. § 6.03(d) (1974).

The confession may in its totality suggest that appellant (1) ought to have been aware in the circumstances of a substantial and unjustifiable risk of drowning Rosenbaum, but nothing therein is to the effect that (2) *he failed to perceive* that risk. *Both* are required to raise the issue of criminally negligent homicide arising from a voluntary act. *Bravo v. State,* 627 S.W.2d 152 (Tex.Cr.App.1982); *Simpkins v. State, supra; Lamberson v. State,* 509 S.W.2d 328 (Tex.Cr.App.1974).

Holding that the trial court was under no duty to submit to the jury the offenses suggested by appellant, I concur in the judgment.