Steven Louis MILLER, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–87–00554–CR.

Court of Appeals of Texas, Houston (1st Dist.).

June 23, 1988.

Allen Isbell, Houston, for appellant.

John B. Holmes, Dist. Atty., William Delmore, III, Asst. Dist. Atty., Harris County, for appellee.

Before LEVY, WARREN and DUGGAN, JJ.

## OPINION

LEVY, Justice.

A jury found appellant guilty of murder and the court assessed punishment at confinement for 20 years.

Appellant and Kenneth Ray Bush, the deceased, had a long-standing quarrel concerning some money that appellant purportedly owed Bush. On December 11, 1980, Bush went to appellant's house looking for him. When he discovered that appellant was not at home, Bush located him by telephone and requested that he return home. Appellant complied with Bush's request, even though Bush had made threatening comments to him over the telephone. Bush had also voiced threats against appellant to others earlier in the day.

Upon appellant's return to his home, an altercation developed between the two men that ended in Bush's death by gunshot wounds at the hands of appellant, who then immediately fled the scene and was not apprehended for several years.

In his first and second points of error, appellant urges that the trial court committed reversible error when it failed to submit to the jury appellant's requested instruction on voluntary manslaughter.

Appellant argues that he was entitled to such an instruction because his testimony raised the issue of whether he was acting under the influence of sudden passion arising from an adequate cause at the time of the offense.

Section 19.04 of the Texas Penal Code provides that a person commits an offense if he causes the death of a person under circumstances that would constitute murder, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause. Tex.Penal Code Ann. § 19.04(a) (Vernon 1974). Subsection (b) provides that "sudden passion" means "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." Subsection (c) of 19.-04 defines "adequate cause" as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection."

Appellant supports his entitlement to a voluntary manslaughter instruction by stating that,

> [t]here had been a history of violent threats from Kenny Bush to the appellant. Moreover, Bush had placed the little .25 automatic, which he always carried, against the appellant's head about three months prior to the fatal shooting. In a conversation with the appellant over the telephone the day of the homicide, Bush threatened to kill him.

> When appellant arrived to [at] his own home later that day, Bush confronted him immediately by getting "up in appellant's face" screaming at him. The appellant tried to make peace, but Bush kept threatening in a very serious voice. The appellant "was scared to death." Knowing Bush carried a small gun, and having had it pointed at his head previously, the appellant went to a bedroom and secured a gun in case he was forced to defend himself against being shot by Bush. Bush went for his gun, according to the appellant, and he "panicked." He

stated that he did not remember pulling the trigger, just that Bush went for his gun. On cross-examination, the appellant stated that he saw Bush with what appeared to be a gun in his back pocket when he first approached him, and that he panicked when he saw Bush go for it.

David Wyatt, a lifelong friend of appellant, who was also a defense witness to the homicide, testified that Bush and appellant were arguing in appellant's living room when Bush said, "Lets go outside," to which appellant replied, "I'll show you outside." Wyatt further testified that appellant "went back to the bedroom, and Kenny [Bush] turned to go towards the door, and then he [Bush] turned back to the inside of the living room, and that's when I heard shots."

The issue before us is whether the evidence was sufficient to raise the issue that appellant acted under the influence of sudden passion.

In *Gonzales v. State*, 717 S.W.2d 355, 56–57 (Tex.Crim.App.1986), the Texas Court of Criminal Appeals held that the evidence was insufficient to raise the issue of sudden passion where the victim came up behind the defendant and fired a shot, whereupon the defendant turned and fired an automatic pistol, killing the victim. In *Gonzales*, the defendant had witnessed a confrontation between a friend of his and the victim. The homicide was precipitated when the defendant observed the victim go to the victim's car and remove something from the truck. Without being certain that the victim had retrieved a gun, the defendant nevertheless armed himself with his friend's automatic pistol. The defendant testified that he walked away and the victim came up behind him and fired.

Quoting the dissenting opinion of the Court of Appeals, the *Gonzales* court agreed that,

> [t]here is nothing in the record which indicates that appellant acted under the immediate influence of sudden passion. To the contrary, appellant anticipated the event and prepared himself to respond to the occasion ... the testimony of appellant ... demonstrates a person pos-

sessed of cool reflection throughout the entire incident.

*Gonzales,* 717 S.W.2d at 357.

We conclude that this assessment can fairly be applied to the case at bar. Appellant "anticipated the event" and "respond[ed] to the occasion" by arming himself. His testimony and his account of the incident on appeal reflect a person "possessed of cool reflection throughout the entire incident." Applying the appropriate standard of review to the facts before us, we hold that there is no evidence that the offense occurred "under the influence of sudden passion arising from an adequate cause."

The trial court did not err in refusing to instruct the jury on voluntary manslaughter. Appellant's first and second points of error are overruled.

■ In his third point of error, appellant avers that the trial court committed reversible error when it overruled his timely objection to the use of the word "murder" in the jury charge. Appellant contends that the use of such word constituted a comment on the weight of the evidence in that it informed the jury that the court was of the opinion that the homicide was "murder," describing a criminal slaying.

The trial court submitted the following charge to the jury, over appellant's timely objection:

> You are instructed that you may consider all relevant facts and circumstances surrounding the murder, *if any,* and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense, if any.

(Emphasis added.)

The complained of language was clearly modified by the limiting phrase "if any." The charge continued on to clearly instruct the jury that:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 11th day of December, 1980, in Harris County, Texas, the defendant, Steven Louis Miller, did then and there unlawfully intentionally or knowingly cause the death of Kenneth Ray Bush, by shooting him with a gun, then you will find the defendant guilty of murder as charged in the indictment.
>
> Unless you so find from the evidence beyond a reasonable doubt or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

While it would have been appropriate to have refrained from use of the word "murder" in the charge, which clearly implies a criminal slaying, in view of the limiting language immediately following the word and considering the trial court's further instruction in which it referred to the offense as "caus[ing] the death of Kenneth Ray Bush, by shooting him with a gun," we cannot hold that the trial court's charge, under the circumstances of this case, amounted to a harmful comment on the weight of the evidence. *See Findley v. State,* 378 S.W.2d 850, 852 (Tex.Crim.App. 1964) (holding that the *absence* of the qualifying phrase "if any" was harmless error in that case); *Booth v. State,* 635 S.W.2d 767, 771 (Tex.App.—Corpus Christi 1982). Because "murder" is an emotive word and its use may, in other contexts, imply a comment on the weight of the evidence, *apparently* constituting an assumption by the court of the truth of a controverted fact issue, we suggest its immediate discontinuance in the court's charge to the jury.

Appellant's third point of error is overruled.

■ Appellant asserts in his fourth point of error that the trial court erred in excluding testimony by defense witness David Wyatt of a conversation with the deceased regarding his reason for meeting appellant, because the proffered testimony falls under an exception to the hearsay rule.

Appellant proffered the following excluded evidence in a bill of exception:

> Q: Mr. Wyatt, did Kenny Bush say anything to you that struck you as unusual

on the way to the house at 3122 Andricks on December 11, 1980?

A: Yes, sir, he did.

Q: What did he say?

A: He said that he was going to try to beat Steve Miller within an inch of his life or half an inch.

While this testimony may have been admissible as an explanation by the deceased of the meeting he planned with the accused, *Trostle v. State*, 588 S.W.2d 925, 29–30 (Tex.Crim.App.1979), its exclusion was harmless because the same or similar evidence was admitted from other sources. *See Johnson v. State*, 604 S.W.2d 128, 132 (Tex.Crim.App.1980). We cite the following five examples:

William Mace, a life-long friend of Bush, testified that Bush made threats against appellant that were very similar to those excluded.

Buddy Shield testified that Bush had threatened to do physical harm to appellant immediately prior to the shooting, threatening precisely that "he was going to whip Steve's ass."

Dick Hilborn testified that just prior to appellant's arrival at the scene of the shooting, Bush said he "was going to beat Steve Miller and take his motorcycle."

The appellant testified that the deceased called him on the telephone at a friend's house on the date of the offense and threatened to kill him and take everything he owned. Even Wyatt was permitted to testify in the presence of the jury that the deceased threatened to "do bad things" to the appellant, although he was not permitted to relate the particulars.

The record is thus replete with evidence that Bush had threatened appellant with bodily injury on the date of the offense. In light of the abundant evidence of Bush's threats that was before the jury, the trial court's exclusion of Wyatt's testimony, though perhaps erroneous, was not harmful.

Appellant's fourth point of error is overruled.

■ In points of error five through seven, appellant urges that the trial court erred in overruling his objection to the submission to the jury of a special issue concerning appellant's use of a deadly weapon in the commission of the offense, and seeks the striking of the deadly weapon finding from the judgment.

The indictment alleged that appellant caused the death of the complainant "by shooting him with a gun," but did not allege that appellant used a "deadly weapon" or a "firearm." Appellant was not given the required notice in the charging instrument or by any pre-trial motion or pleading that the State would seek a finding that a deadly weapon was used or exhibited, and he timely objected to the trial court's authorizing the jury to make such a finding, absent such notice.

The Court of Criminal Appeals recently has held that the State must provide adequate notice of its intention to submit a deadly weapon finding. *Ex parte Patterson*, 740 S.W.2d 766 (Tex.Crim.App.1987); *see also Wissinger v. State*, 702 S.W.2d 261, 265 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd) (Levy, J., dissenting).

Failure to provide such notice was deemed "fundamental" error, but the Court declined to require that such notice appear in the indictment, holding only that the State must give adequate notice. *Ex parte Patterson*, 740 S.W.2d at 776–78. Appellant contends, and the State does not dispute, that he received no notice of the State's intention to submit a deadly weapon issue prior to the preparation of the court's charge. We hold that this did not afford the appellant adequate notice to enable him to prepare a defense thereto, and that the trial court's charge, insofar as it authorized the jury to answer the special issue regarding appellant's use of a deadly weapon, was fundamentally defective.

Points of error five through seven are sustained.

In light of our decision on points of error five through seven, we need not address appellant's eighth point of error in which he asserts that the deadly weapon finding should be stricken from the judgment because the underlying statute, Tex.Code

Crim.P.Ann. art. 42.12, § 3g(a)(2), is unconstitutionally vague as it applies to this appellant.

The trial court's judgment will be reformed to delete both the recitation of the jury's answer to the deadly weapon special issue, and the trial court's affirmative finding thereon. In all other respects, the trial court's judgment is affirmed.

The clerk of the court is directed to transmit a copy of the reformed judgment to the Texas Department of Corrections.