Charles Randall **BRUNSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 3–87–141–CR, 3–87–142–CR.

Court of Appeals of Texas,
Austin.

Jan. 25, 1989.

Roy E. Greenwood, Austin, for appellant.

Charles D. Penick, Crim. Dist. Atty., John M. Hawkins, Asst. Crim. Dist. Atty., Bastrop for State.

Before SHANNON, C.J., and CARROLL and JONES, JJ.

## ON MOTION FOR REHEARING

JONES, Justice.

The opinion handed down by this Court on November 30, 1988, is withdrawn and this opinion is filed in its place.

Upon two separate indictments, a jury convicted appellant of murder, Tex.Pen. Code Ann. § 19.02 (1974), for which a punishment of forty-five years confinement was assessed, and of injury to a child by intentional or knowing conduct, Tex.Pen. Code Ann. § 22.04 (Supp.1989), for which a punishment of ten years confinement was assessed. We will affirm the judgment of conviction for injury to a child and reverse the judgment of conviction for murder and remand that cause for a new trial.

Appellant presents eight points of error, divisible into four groups: (1) the indictment and court's charge in the injury-to-a-child case were fatally defective because they referred to causing injury to a child "younger than 15 years of age" rather than "14 years of age or younger," as the statute is phrased; (2) the trial court erred in failing to give appellant's requested charges on the right to arm himself and seek an explanation, and limiting consideration of extraneous offenses; (3) the trial court erred in failing to give appellant's requested charge on the lesser included offense of injury to a child by reckless conduct; and (4) the trial court erred in failing to give appellant's requested charge on voluntary manslaughter.

Briefly stated, the testimony showed that on the evening of March 6, 1987, appellant and Pamela Kidd, who were acquaintances, had an argument in a bar in Bastrop County. After dropping his wife off at their home, appellant drove to Kidd's home, allegedly to apologize to her and seek an apology from her. Knowing that Kidd shared her residence with Bill Hicks, the deceased, whom appellant believed had a violent nature, appellant took with him a loaded .38 caliber pistol, along with extra ammunition. Appellant and the deceased had a confrontation at the front porch of the house shared by Kidd, Hicks, and the children of both. The ensuing shootout left Hicks dead, Kidd's 13-year-old daughter, Harmony Potts, seriously wounded from appellant's gun, and appellant himself wounded from a .22 caliber pistol fired by Kidd.

## INJURY TO A CHILD

In his first two points of error, appellant attacks the validity of the indictment and court's charge on the ground that they improperly refer to causing injury to a child "younger than 15 years of age" rather than "14 years of age or younger," as section 22.04 of the Penal Code states. During oral argument, however, counsel for appellant forthrightly conceded that additional research had convinced him these points were without merit. We agree. *See Castillo v. State,* 616 S.W.2d 620 (Tex.Cr. App.1981); *Phillips v. State,* 588 S.W.2d 378 (Tex.Cr.App.1979); Tex.Code Cr.P. art. 21.17 (1966). Points one and two are overruled.

In points of error three, four, five, and six, appellant complains of the trial court's failure to give appellant's requested charge on the right to arm himself and seek an explanation, and of the court's failure to limit the jury's consideration of extraneous offenses.

■ Regarding the requested right-to-arm-himself instruction, the trial court instructed the jury on the law of self-defense, but not on any limiting theories such as provoking the difficulty. The law on this point is clear. If the court's charge limits the self-defense instruction, it is reversible error not to further instruct the jury that the accused's right of self-defense is not necessarily abridged by the fact that he carried arms to the scene of the difficulty; conversely, "unless the court's charge places some limitation upon the accused's right of self-defense, such as by charge on provoking the difficulty or otherwise, a

charge on the right to carry arms is not necessary." *Williams v. State,* 580 S.W.2d 361, 362 (Tex.Cr.App.1979), *quoting from Young v. State,* 530 S.W.2d 120, 121–22 (Tex.Cr.App.1975). We hold that the trial court did not err in failing to submit to the jury an instruction on appellant's right to arm himself.

■ Regarding the instruction on limiting consideration of extraneous offenses, appellant argues that although he did not specifically request such an instruction, his requested charge on the right to carry arms was sufficient to call the court's attention to the need to charge on the other. We disagree. Although appellant argued in his requested charge on the right to arm himself that jurors could be presumed to know that carrying a handgun is illegal and therefore "[t]here would be an implied illegality in a defendant's legitimate exercise of his right to arm himself ...," he did so only in the context of seeking an instruction on the right to arm himself. The two doctrines are wholly distinct, and a reference to one does not necessarily call to mind the other. We hold that appellant's requested charge on the right to arm himself was not sufficient to call the trial court's attention to the alleged omission in the court's charge of an instruction limiting consideration of extraneous offenses. Accordingly, any error in failing to submit the instruction is waived. *Wilson v. State,* 730 S.W.2d 438 (Tex.App.1987, pet. ref'd). Nor is the failure to submit such an instruction fundamental error. *Johnson v. State,* 629 S.W.2d 731 (Tex.Cr.App.1981).

■ Moreover, the carrying of the pistol with which appellant killed Hicks and wounded Harmony Potts is part of the context in which the criminal acts occurred—the "res gestae"—and therefore no limiting instruction was required. *Luck v. State,* 588 S.W.2d 371 (Tex.Cr.App.1979). Appellant's points of error three, four, five, and six are overruled.

■ In point of error eight, appellant contends that the trial court erred in failing to charge the jury on the lesser included offense of "reckless injury to a child," as set forth in Tex.Pen.Code Ann. § 22.04(b) (Supp.1989).

In our original opinion, we disposed of this point by holding that appellant's intention to kill Hicks would, pursuant to the doctrine of transferred intent, be transferred to the additional offense committed—injury to a child. We cited, among other cases, *Caraway v. State,* 263 S.W. 1063 (Tex.Cr.App.1923), in which the court recognized a "transferred justification" corollary to the transferred intent doctrine by holding that if the defendant was justified under the laws of self-defense in shooting at the intended victim, the unintentional killing of an innocent bystander "constituted no offense."

In his motion for rehearing, appellant argues that section 9.05 of the Texas Penal Code entitled him to a charge on reckless injury to a child notwithstanding the transferred intent doctrine. Section 9.05 provides as follows:

Even though an actor is justified under this chapter in threatening or using force or deadly force against another, if in doing so he also recklessly injures or kills an innocent third person, the justification afforded by this chapter is unavailable in a prosecution for the reckless injury or killing of the innocent third person.

The Practice Commentary to section 9.05 goes on to state that,

Section 9.05 alters prior Texas law, represented by the Caraway case, by measuring the actor's culpability independently as to each of his victims, whether intended or unintended. Under the facts of Caraway, for example, conceding defendant was justified in shooting at his assailant, if in doing so he acted recklessly vis-a-vis the innocent victim, Section 9.05 authorizes his conviction for involuntary manslaughter.

Recognizing that section 9.05 "alters prior Texas law" in some instances, we are, nonetheless, not entirely convinced of its applicability in the instant case. First, the provision appears not to have been intended for the benefit of the accused, but rather to narrow the scope of certain justifica-

tion defenses in a "prosecution for the reckless injury or killing of an innocent third person." Second, in requesting a charge on "reckless injury to a child," appellant does not appear to have brought section 9.05 to the attention of the trial court, such as by predicating his proposed recklessness instruction on a finding that he acted in self-defense vis-a-vis the intended victim, Hicks; rather, he apparently requested the charge simply as a lesser included offense, thereby raising the possibility that he waived the point.

We will not address the foregoing concerns, however, because we are of the opinion that the point is more easily decided on another ground. Since the offense of reckless injury to a child differs from the offense of intentional or knowing injury to a child only in that a less culpable mental state is required, the former is clearly a lesser included offense of the latter. Tex. Code Cr.P.Ann. art. 37.09(3) (1981). However, under the second prong of the two-part test enunciated in *Royster v. State,* 622 S.W.2d 442 (Tex.Cr.App.1981), a charge on a lesser included offense is required to be given only where the record contains "some evidence that the appellant, if guilty, is guilty only of the lesser included offense...." *Aguilar v. State,* 682 S.W.2d 556, 558 (Tex.Cr.App.1985).

The evidence in this case would not support a finding that appellant was guilty only of the lesser offense of reckless injury to a child. The testimony of Pamela Kidd and her two children was that after killing Hicks, appellant entered the house and began shooting directly at Harmony Potts and her brother—clearly intentional, not reckless, conduct. The testimony of appellant, set forth in more detail below, was to the effect that when he and Hicks were only a few feet away from each other, he thought he saw Hicks pulling a gun or knife from behind his back. He stated that, "I panicked and I pulled my gun and I started firing. And I just kept pulling the trigger." He testified that he emptied his gun at Hicks, that he never intended to injure Harmony Potts, and that he did not even see her at all before the shooting. The only way he could explain Harmony's

wounds was to assume that some of the bullets he fired at Hicks must have missed and gone into the house, hitting her.

The mental state of recklessness is defined as follows:

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex.Pen.Code Ann. § 6.03(c) (1974). When appellant's actions are judged on the basis of his own testimony—i.e., that he fired at Hicks only to save his own life, or out of panic, and without having seen anyone behind Hicks—we do not believe the evidence tends to establish that appellant was aware of but consciously disregarded a risk that was unjustifiable, or that his actions constituted a gross deviation from the standard of care that an ordinary person would have exercised under all the circumstances as viewed from appellant's standpoint. Based on the foregoing standard, therefore, we hold that the evidence herein does not raise the issue of recklessness with regard to the injury to Harmony Potts. *See Simpkins v. State,* 590 S.W.2d 129 (Tex.Cr.App.1979); *Pimentel v. State,* 710 S.W.2d 764 (Tex. App.1986, pet. ref'd). Accordingly, the trial court did not err in refusing to charge the jury on the offense of injury to a child by reckless conduct. Point of error eight is overruled.

## MURDER

In point of error seven, appellant contends that the trial court erred in failing to charge the jury on voluntary manslaughter. By proper procedure, appellant requested the trial court to submit such a charge.

The standard for determining whether a defensive issue or lesser included offense

should be submitted to the jury is summarized in the following oft-quoted passage:

> The credibility of evidence and whether it is controverted or conflicts with other evidence in the case may not be considered in determining whether a defensive charge or an instruction on a lesser included offense should be given. When evidence from any source raises a defensive issue or raises an issue that a lesser included offense may have been committed and a jury charge on the issue is properly requested, the issue must be submitted to the jury. It is then the jury's duty, under the proper instructions, to determine whether the evidence is credible and supports the defense or the lesser included offense.

*Moore v. State,* 574 S.W.2d 122, 124 (Tex. Cr.App.1978).

 A charge on voluntary manslaughter should be given only when there is evidence that the defendant acted under the immediate influence of sudden passion arising from adequate cause. *Marras v. State,* 741 S.W.2d 395, 405 (Tex.Cr.App. 1987). "Sudden passion" is defined by statute as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." Tex.Pen.Code Ann. § 19.04(b) (1974). "Adequate cause" is defined as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Tex.Pen.Code Ann. § 19.04(c) (1974).

In making the determination whether sudden passion has been raised in a given case, this Court simply inquires whether there is any evidence, however weak, contested or incredible, which could support a rational jury finding that the accused acted under the immediate influence of sudden passion arising from an adequate cause. *Gold v. State,* 736 S.W.2d 685, 688 (Tex.Cr. App.1987). Fear alone is not sufficient to raise voluntary manslaughter, unless it rises to the level of terror sufficient to render the mind incapable of cool reflection. *Daniels v. State,* 645 S.W.2d 459 (Tex.Cr.App. 1983). Nor is prior provocation alone sufficient. *Hobson v. State,* 644 S.W.2d 473 (Tex.Cr.App.1983). The testimony of the accused alone can be sufficient to raise voluntary manslaughter. *Payne v. State,* 668 S.W.2d 495 (Tex.App.1984, no pet.). Testimony raising the issue of self-defense does not necessarily raise the issue of voluntary manslaughter.[1] *Luck v. State,* 588 S.W.2d 371 (Tex.Cr.App.1979).

We now turn to an examination of the evidence. Appellant provided virtually all of the testimony about the events that led up to the killing of Hicks. He testified that after his argument with Pamela Kidd, he and his wife drove home. After cooling off for awhile, he decided to go to the residence shared by Kidd and Hicks in order to apologize to Kidd and seek an apology from her. He stated that:

> I started to leave and then I had thought about how Bill [Hicks] was, how violent he was and some of the things that he had told me. So I went in my mother's house and I got her gun and put it in the back of my pants just above my right pocket.

Appellant testified to several things that made him believe Hicks had a violent nature: that evening before their argument, Kidd had told appellant that Hicks "had beaten the hell out of her"; Hicks had told appellant that he "and some other guy took some 17 year old kid out in the woods, shaved his head and beat him"; and appellant had once witnessed Hicks try to start a fight with a man in a bar. Appellant testified that he was afraid of Hicks "to a certain degree." Appellant also testified

---

1. Compare, however, the dissenting opinion of Judge Clinton in *Gonzales v. State,* 717 S.W.2d 355 (Tex.Cr.App.1986), in which he adopts the view that "where the case becomes involved from the issues raised, and it is claimed the killing resulted from a fight, and the facts of its inception or progress become controverted issues raising the question of self-defense, it is a rare instance where the issue of manslaughter does not also become pertinent." *Id.* at 363 (quoting from *Lewis v. State,* 231 S.W. 113, 116 (Tex.Cr.App.1921)).

that he knew Hicks and Kidd had "guns in the house."

Appellant stated that when he arrived at the residence he saw that the bedroom lights were off and started to leave. He then heard Hicks yelling "violently and angrily" at him from the front porch, so he backed up and got out of his car. Appellant testified that Hicks looked at him "with furor [sic] in his eyes." Appellant then testified as follows:

I got out and I walked up to the porch. I was three or four feet away from the porch I guess. And Bill was standing there in the porch and he had his right hand behind his hip and he didn't even give me a chance to say anything. He just said, "You got a f___ing problem," real angrily. And then he moved his hand from behind his hip and I saw a metal flash in front of his hand. And at that time I panicked and I pulled my gun and I started firing. And I just kept pulling the trigger. It clicked two or three times before I stopped pulling the trigger.

\* \* \* \* \* \*

I didn't know if it was a knife or a gun or what. I just saw the flash of metal.

\* \* \* \* \* \*

All I know is that when he pulled his hand and started towards me, I pulled my gun and kept firing.

\* \* \* \* \* \*

When he came at me I panicked and I just kept pulling the trigger as fast as I could.

\* \* \* \* \* \*

As he moved towards me I drew my gun and took one step to take my position and then I fired.

\* \* \* \* \* \*

He took a step towards me and his foot landed right at the top of the steps.

Appellant also testified that he believed if he had not shot Hicks, Hicks would have killed him.

We do not view appellant's testimony as either particularly strong or particularly credible. Under the rules stated above, however, such factors may not be considered in determining whether the jury should have been charged on voluntary manslaughter.

The requirement that the record contain some evidence that the accused acted "under the immediate influence of sudden passion arising from an adequate cause" before a voluntary manslaughter charge is mandatory divides logically into two inquiries: (1) whether there is some evidence of "adequate cause," i.e., some provocation attributable to the deceased which would commonly produce in a person of ordinary temper one of the emotions enumerated in section 19.04(c) to a degree sufficient to render the mind incapable of cool reflection, and (2) whether there is some evidence of "sudden passion," i.e., that the accused in fact acted under the immediate influence of one of the listed emotions arising from the provocation. See Hobson v. State, 644 S.W.2d 473 (Tex.Cr.App.1983); Payne v. State, 668 S.W.2d 495 (Tex.App.1984, no pet.). We will first consider the issue of adequate cause.

Viewed fairly and without weighing its credibility, appellant's testimony regarding provocation was that (1) a man of violent nature (2) who was angry and cursing (3) took a step toward appellant, (4) while simultaneously jerking his hand from behind his back, revealing a "metal flash." We believe this testimony established the existence of some conduct by Hicks which the jury could permissibly have found was adequate to commonly produce "a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Indeed, since the trial court submitted a charge on self-defense and the use of deadly force, that court must have been convinced that there was some evidence that appellant reasonably believed deadly force was immediately necessary to protect himself against Hicks's use or attempted use of unlawful deadly force. See Hayes v. State, 728 S.W.2d 804 (Tex.Cr.App.1987); Tex.Pen.Code Ann. § 9.32 (Supp.1988). It is difficult for this Court to imagine a situation in which the evidence would be

sufficient to raise the issue of the use of deadly force in self-defense, and yet would not be sufficient to satisfy the adequate cause prong of the voluntary manslaughter test. We hold that appellant's testimony was sufficient evidence to have allowed the jury to find adequate cause.

Evidence tending to establish sufficient provocative conduct by the deceased is, of course, only half the test. Before a charge on voluntary manslaughter is required, there must also be some evidence tending to establish that the accused did *in fact* kill "under the immediate influence of sudden passion"; *i.e.*, that he was actually rendered incapable of cool reflection by anger, rage, resentment, or terror. We will next consider the issue of sudden passion.

Appellant testified that when Hicks "took a step" toward him and "jerked his hand out from behind his hip" and appellant saw a "metal flash," he "panicked" and started firing. Several well-known dictionaries define "panic" as follows: Webster's Third New International Dictionary (Unabridged Ed.1961): "A sudden overpowering fright"; American Heritage Dictionary of the English Language (1973): "A sudden, overpowering terror"; The Random House Dictionary of the English Language (Unabridged Ed.1967): "A sudden overwhelming fear, with or without cause, that produces hysterical or irrational behavior"; The Compact Edition of the Oxford English Dictionary (1971): "A sudden and excessive feeling of alarm or fear ... leading to extravagant or injudicious efforts to secure safety." Although the phraseology of each is different, they all describe panic essentially as being terror which overwhelms the mind. Thus, the conclusion is inescapable that when appellant testified, "I panicked," he was testifying in shorthand form, "I experienced a sudden terror of such degree that it overwhelmed my mind." Such testimony was sufficient to have allowed the jury to find sudden passion.

We are aware that a contrary result was reached in *Miller v. State*, 753 S.W.2d 473 (Tex.App.1988, pet. ref'd). A review of the facts in *Miller* shows it to be remarkably

similar to the present case, and in many ways it contains even stronger evidence to raise voluntary manslaughter:

There had been a history of violent threats from Kenny Bush to the appellant. Moreover, Bush had placed the little .25 automatic, which he always carried, against the appellant's head about three months prior to the fatal shooting. In a conversation with the appellant over the telephone the day of the homicide, Bush threatened to kill him.

When appellant arrived to [at] his own home later that day, Bush confronted him immediately by getting "up in appellant's face" screaming at him. The appellant tried to make peace, but Bush kept threatening in a very serious voice. The appellant "was scared to death." Knowing Bush carried a small gun, and having had it pointed at his head previously, the appellant went to a bedroom and secured a gun in case he was forced to defend himself against being shot by Bush. Bush went for his gun, according to the appellant, and he "panicked." He stated that he did not remember pulling the trigger, just that Bush went for his gun. On cross-examination, the appellant stated that he saw Bush with what appeared to be a gun in his back pocket when he first approached him, and that he panicked when he saw Bush go for it.

*Id.* at 475.

In *Miller*, the court did not discuss the meaning of "panic." Rather, relying on *Gonzales v. State*, 717 S.W.2d 355 (Tex.Cr. App.1986), the court simply concluded that sudden passion was not raised because "[a]ppellant 'anticipated the event' and 'respond[ed] to the occasion' by arming himself." 753 S.W.2d at 476.

We believe the *Miller* court misconstrued *Gonzales*. The principle that seems to have been established in *Gonzales* is "that at least when the evidence raises self-defense, before it may be said that it also raises voluntary manslaughter, there must be some additional showing, apart from the circumstances themselves, that appellant was in fact enraged, resentful or terrified." *Gonzales*, 717 S.W.2d at 362 (dissenting

opinion of Clinton, J.). The dissent felt that the jury had a right to infer *from the circumstances* that the fear experienced by the accused rose to the level of "sudden passion"; the majority disagreed, holding that the evidence of the accused's actual mental state had to be more direct.

The furthest limit to which the holding in *Gonzales* can logically be extended is that a jury may *never* be allowed to infer sudden passion from *any* circumstances, and that the evidence of the mental state of the accused must *always* be direct. Even if this is correct, however, nothing could be more direct than testimony from the accused to the effect that he "experienced a sudden terror of such magnitude that it overwhelmed my mind." Yet that is precisely the meaning of the words, "I panicked." There was no such direct evidence in *Gonzales*.

We decline to follow *Miller*. We hold instead that the testimony of the appellant was sufficient to raise the issues of adequate cause and sudden passion and hence to require that an instruction on voluntary manslaughter be submitted to the jury. The trial court erred in failing, upon proper request, to submit such an instruction.

As the Court of Criminal Appeals has said, "We emphasize that the truth or credibility of appellant's testimony is not at issue here. The issue is whether the jury should have been instructed to decide those facts under the applicable law." *Hayes v. State,* 728 S.W.2d 804, 808 (Tex.Cr.App. 1987).

Having concluded that the jury was improperly denied the opportunity to decide the issue of voluntary manslaughter, we cannot conclude that *no* harm resulted from the error. Accordingly, we must sustain appellant's point of error seven and reverse that portion of the trial court's judgment. *Arline v. State,* 721 S.W.2d 348 (Tex.Cr.App.1986).

The judgment of the trial court in cause number 3–87–141–CR, the conviction for injury to a child, is affirmed; the judgment in cause number 3–87–142–CR, the conviction for murder, is reversed and that cause is remanded for a new trial.