IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-413-CR





BRYAN WAYNE FERGUSON,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE





 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT



NO. 0920491, HONORABLE MACE B. THURMAN, JR., JUDGE PRESIDING



 





 After finding appellant guilty of the offense of voluntary manslaughter, Tex. Penal
Code Ann. § 19.04 (West 1989), the jury assessed punishment at confinement for seven years and
a fine of ten thousand dollars. The trial court had charged the jury on the primary offense of
murder, Tex. Penal Code Ann. § 19.02 (West 1989), and, over appellant's objection, on the lesser
included offense of voluntary manslaughter. The trial court's action in charging the jury on
voluntary manslaughter forms the basis of appellant's two points of error. We will overrule
appellant's points of error and affirm the judgment of the trial court.

 It is undisputed that appellant caused the death of the decedent by cutting his throat
with a broken beer bottle at the Lighthouse Bar in the early morning hours of October 6, 1991. 
The decedent had broken up with his girlfriend as a result of her relationship with appellant. This was a source of tension between decedent, appellant and a third party named Bill
Mayo, all of whom had been drinking in the hours preceding the fatal altercation.

 When evidence from any source raises an issue that a lesser included offense may
have been committed and a jury charge on the issue is properly requested, the issue must be
submitted to the jury. Moore v. State, 574 S.W.2d 122, 124 (Tex. Crim. App. 1978). "Sudden
passion" is defined as "passion directly caused by and arising out of provocation by the individual
killed or another acting with the person killed which passion arises at the time of the offense and
is not solely the result of former provocation." Tex. Penal Code Ann. § 19.04(b) (West 1989). 
Fear alone is not sufficient to demonstrate "sudden passion arising from adequate cause" and thus
to raise voluntary manslaughter unless the fear rises to the level of terror sufficient to render the
mind incapable of cool reflection. Daniels v. State, 645 S.W.2d 459, 460 (Tex. Crim. App.
1983).

 Testimony showed that a verbal confrontation between appellant and the decedent
occurred at the bar the afternoon preceding the fatal attack. Bill Mayo started an argument with
appellant in the bar later that evening. Mayo was described as a person with an "intimidating"
appearance who was drunk, "hostile" and "aggressive." However, a short time before the fatal
altercation, the decedent, appellant and Bill Mayo were observed with their arms around each
other, professing their friendship and "doing a male bonding thing."

 The events that immediately preceded the fatal stabbing were described in the
testimony of Don Samson, a patron at the Lighthouse Bar. After being introduced to appellant,
Samson observed that appellant was drunk and talking to other people about a problem he had
earlier that evening about a girl. Subsequently, Samson met Mayo, who engaged appellant in an
argument at Samson's table that continued as they moved to the bar where they were standing
"face to face" in a "very threatening manner." Samson next saw the two men on the bar's deck,
where "Mayo had his arm around Bryan's [appellant's] neck, sort of a headlock and was hollering
at him." Appellant was trying to make peace with Mayo and asking him to leave him alone. 
Samson gave the following account of the decedent's entry into the altercation:



 I saw David Viviano [decedent] come running up the stairs very forcefully, very
loudly, shaking the entire landing coming up. When he came up to the top of the
stairs, he never stopped. He went immediately over to Bryan [appellant] and Bill
[Mayo], grabbed hold of Bryan in some manner which I couldn't really see because
Bryan had his back to me. But he either got him by the shirt or by the throat and
between Bryan -- excuse me, between David and Bill at that point they began
shaking Bryan and banging him up against the rail.



The manner in which appellant inflicted the fatal wounds was described by Samson:



He was trying to protect himself. He swung it out in front of himself. I don't
think he could even see where he was swinging it. His head was back. His head
was back like looking up at the sky. I don't think he could even really see where
he was swinging the beer bottle. He wasn't aiming at anything. He was strictly
swinging it in front of him, trying to get them to back away.



 Following the fatal stabbing, appellant returned to the bar. Witnesses testified that
appellant appeared "panic stricken -- scared, broken up -- excited -- acted like it happened real fast
and he didn't mean for that to happen." Immediately following the attack witnesses said that
appellant stated, "Oh, my God, I didn't mean to do it -- I didn't mean to do it, but I'm going to
fry anyway."

 Appellant contends that Samson's testimony only raises the issue of self-defense
and that Samson's testimony does not demonstrate that appellant was extremely excited or agitated
so as to constitute sudden passion. The defense of self-defense and the lesser included offense of
voluntary manslaughter may exist where there is evidence that the offense occurred under the
influence of sudden passion. See Acosta v. State, 742 S.W.2d 287, 288 (Tex. Crim. App. 1986);
Lucks v. State, 588 S.W.2d 371, 374-75 (Tex. Crim. App. 1979), cert. denied, 446 U.S. 994
(1980).

 In Havard v. State, 800 S.W.2d 195 (Tex. Crim. App. 1989), the court held that
the issue of voluntary manslaughter was raised by the defendant's testimony that he was
emotionally hurt and mad when he saw two men coming toward him with weapons drawn, that
he was in fear of his life, and that the events of the shooting happened so quickly that he did not
know what he was thinking at the time. Id. at 217. In Brunson v. State, 764 S.W.2d 888 (Tex.
App.--Austin 1989, pet. ref'd), the defendant's testimony that he "panicked" when the victim came
at him was held sufficient to have allowed the jury to find sudden passion. Id. at 895. This Court
reasoned that the defendant's testimony that he "panicked" was a shorthand expression of "I
experienced a sudden terror of such a degree that it overwhelmed my mind." Id. "[P]rovocation,
in support of a claim of 'sudden passion,' may derive from someone other than the deceased" if
the third party was acting in concert with the deceased. Havard, 800 S.W.2d at 215.

 Tension had existed between appellant, Mayo and the decedent prior to the fatal
stabbing, and there was testimony that appellant had armed himself as a result of the ill-feeling;
however, the expression of friendship between the men a short time earlier is inconsistent with
the theory that the ultimate attack resulted solely from former provocation. While appellant did
not testify, observations of witnesses who described the manner in which appellant was swinging
the broken bottle, the appearance of being "panic stricken -- excited -- like it happened real fast"
coupled with appellant's statements immediately following the fatal attack constitute evidence from
which a jury could have reasonably concluded that appellant experienced sudden terror of such
a degree that it overwhelmed his mind. A jury could reasonably infer that the fear experienced
by appellant rose to the level of sudden passion. We hold that the trial court did not err in
charging the jury on the lesser included offense of voluntary manslaughter. Appellant's first point
of error is overruled.

 In his second point of error, appellant contends that the trial court erred in charging
the jury on voluntary manslaughter over his objection under Article I, section 13 of the Texas
Constitution and Section 19.04 of the Texas Penal Code.

 Other than citing Heitman v. State, 815 S.W.2d 681 (Tex. Crim. App. 1991),
appellant has advanced no argument or authority concerning the protection provided by the Texas
Constitution or how that protection differs from that provided by the United States Constitution. 
Narvaiz v. State, 840 S.W.2d 415, 432 (Tex. Crim. App. 1992), cert. denied, 113 S. Ct. 1422
(1993). Nothing is presented for review. Appellant's second point of error is overruled.

 The judgment of conviction is affirmed.



 

 Tom G. Davis, Justice

Before Justices Jones, Kidd and Davis*

Affirmed

Filed: January 18, 1995

Do Not Publish



















* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).