**Ray OJEDA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 04–96–00069–CR, 04–96–00070–CR.**

Court of Appeals of Texas,
San Antonio.

April 2, 1997.

Edward N. Daneri, Law Offices of Edward N. Daneri, P.C., San Antonio, for appellant.

Brenda Levenstein, Assistant Criminal District Attorney, San Antonio, for appellee.

Before STONE, GREEN and DUNCAN, JJ.

STONE, Justice.

This is Ray Ojeda's second appeal from convictions arising out of a multiple shooting. Ojeda appeals from a conviction of voluntary manslaughter for the death of Tomas Cantu and a conviction of murder for the death of Marcelino Solis. Ojeda urges one point of error for each conviction. With respect to his voluntary manslaughter conviction, Ojeda complains that the State failed to negate the immediate necessity element of self-defense. With respect to his murder conviction, Ojeda complains that the State failed to negate the issue of sudden passion. For the following reasons, we affirm the judgment of the trial court.

*Factual and Procedural Background*

Ojeda's convictions stem from a multiple shooting which occurred in the parking lot of a bar. At or near closing time, Ojeda left the bar with his friend, Raymond Espinoza, and got into his truck. Upon backing up his truck, Ojeda hit Benito Juarez's vehicle. An altercation ensued which resulted in the shooting deaths of Benito Juarez, Tomas Cantu, and Marcelino Solis.

What led to the shooting was disputed. Ojeda testified that he stopped to examine the damage and Juarez approached him and yelled at him for hitting his vehicle. Ojeda offered to pay for any damage and returned to his truck. According to Ojeda, Juarez followed him to his truck, pounded on the windshield, opened his door, and pulled him out of the truck. Ojeda testified that Juarez struck him in the face and then a number of people joined Juarez in hitting and kicking him. He could not, however, identify any individual other than Juarez. Ojeda stated he feared for his life and worried that a blow to his head might kill him since he was predisposed to head injury as a result of a childhood injury. During the group confrontation described by Ojeda, he was able to brush off his attackers, reach into his truck, and retrieve a gun. Ojeda testified that Juarez grabbed the gun and shots were fired. Ojeda later explained that he sporadically fired shots to defend himself against his attackers. Espinoza, Ojeda's companion, was the only witness to confirm Ojeda's account of multiple attackers, but his testimony indicated that two sets of gunshots were fired.

Ojeda's characterization of a group confrontation, as well as his version of the timing of the shots he fired, were contradicted by eye-witness testimony. Several witnesses testified that they heard two distinct sets of gunfire shots. Dorothy Cerda, Juarez's girlfriend, testified that Juarez and Ojeda were struggling and two shots were fired. Juarez, wounded by one of the shots, began walking toward Cerda. Cerda then noticed Cantu struggling with Ojeda. After the first shots were fired, Cantu confronted Ojeda in an attempt to disarm him. During the Cantu/Ojeda struggle, two more shots were fired and Cantu fell to the ground. Cantu and Marcelino Solis were fatally wounded from this second round of shooting. Esperanza Gallegos, Cerda's mother and eye-witness to the fight, corroborated Cerda's testimony.

Jesse Ortiz, the on-duty security guard, also testified that two sets of shots were fired. Following the second set of shots, Ortiz entered the fracas. Ortiz testified that Ojeda was waving the gun in his face as well as pointing the weapon at the on-lookers. Ortiz struck Ojeda and seized the gun. Ojeda fell to the ground and it was then that a group of individuals began kicking and hitting him. While these witnesses acknowledged that individuals were watching the altercation, no one testified that anyone joined in the Ojeda/Juarez fight or in the Ojeda/Cantu fight.

Ojeda was charged with murder in three separate causes for the shooting deaths of the three men. The causes were consolidated in one trial and the jury found Ojeda not guilty for the death of Juarez by way of self-defense and guilty of murder for the deaths of Cantu and Solis. Ojeda appealed the convictions and this Court reversed and remanded based upon the trial court's failure to include voluntary manslaughter instructions in the jury charge. *Ojeda v. State,* Nos. 04–92–00560–CR & 04–92–00561–CR (Tex. App.—San Antonio March 9, 1994, no writ) (not designated for publication).

On retrial for murder for the deaths of Cantu and Solis, the jury found Ojeda guilty

of voluntary manslaughter for the death of Cantu and guilty of murder for the death of Solis.

### Self-defense

By his first point of error, Ojeda contends that the trial court erred in finding him guilty of voluntary manslaughter of Cantu since the State never negated Ojeda's self-defense claim that the shootings were immediately necessary to protect him from the use or attempted use of deadly force by Cantu. Ojeda contends that because "immediate necessity" was established in the first trial when the jury found he was acting in self-defense when Juarez was killed, the State now must negate the immediate necessity issue in order to find him guilty of voluntary manslaughter. In conjunction with this claim, Ojeda challenges the legal and factual sufficiency of the evidence of his voluntary manslaughter conviction.

We reject Ojeda's argument for the following reasons. First, the issue of Juarez's death was not before the second jury. In fact, the jury was instructed that the evidence concerning Juarez's death was admitted solely for the purpose of aiding them in determining Ojeda's intent in connection with the murder charges for the deaths of Cantu and Solis.

Second, Ojeda misstates the consequences of the introduction of his self-defense theory. When the issue of self-defense is raised, the State has the burden of persuasion to disprove self-defense. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex.Crim.App. 1991). This is not a burden of production requiring the State to affirmatively produce evidence refuting the self-defense claim. Rather, this burden requires the State to prove its case beyond a reasonable doubt. *Id.*; *Alvarado v. State*, 821 S.W.2d 369, 372 (Tex.App.—Corpus Christi 1991, no pet.). Since self-defense is a fact issue to be determined by the fact-finder, the credibility of the self-defense evidence lays solely within the jury's province and the jury is free to accept or reject it. *Williams v. State*, 911 S.W.2d 191, 194 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd); *Saxton*, 804 S.W.2d at 913–14.

The relevant question, then, is whether the State proved beyond a reasonable doubt the offense of voluntary manslaughter. Did the State establish that Ojeda caused the death of Cantu while under the immediate influence of sudden passion arising from an adequate cause? Tex.Penal Code Ann. §§ 19.02(a)(1), (2) (Vernon 1994) (voluntary manslaughter defined). In resolving the issue of the legal sufficiency of the evidence, this Court, after viewing the evidence in the light most favorable to the jury's verdict, must determine whether any rational trier of fact would have found beyond a reasonable doubt the essential elements of the offense and also would have found against the defendant on the issue of self-defense beyond a reasonable doubt. *Valdez v. State*, 776 S.W.2d 162, 165 (Tex.Crim.App. 1989), *cert. denied*, 495 U.S. 963, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990). In conducting a factual sufficiency review, however, we do not view the evidence in the light most favorable to the prosecution, and we set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996).

The evidence shows that Ojeda and Juarez were fist-fighting, Ojeda retrieved a gun and fired one shot wounding Juarez. Once Ojeda shot Juarez, Cantu attempted to disarm Ojeda and was eventually shot during their struggle. A rational jury could conclude that when Cantu was attempting to disarm Ojeda, Cantu was not using deadly force and thus, Ojeda was not justified in responding with deadly force. A rational jury could also conclude that when Ojeda retrieved his gun, he gained an advantage in the fight to the extent that he was no longer in fear for his life and he could have safely retreated without further incident. Further, a rational jury could conclude that although Ojeda was not justified in using deadly force in response to non-deadly force, he knowingly and intentionally shot Cantu while under the influence of sudden passion. Intent to kill may be inferred from Ojeda's use of a deadly weapon in a deadly manner; indeed,

the inference is almost conclusive. *Adanandus v. State,* 866 S.W.2d 210, 215 (Tex.Crim. App.1993), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994).

Accordingly, we find that a rational jury could have found beyond a reasonable doubt that Ojeda intentionally caused the death of Cantu by intending to cause serious bodily injury and committing an act clearly dangerous to human life and that he was under the immediate influence of sudden passion. *See Valdez,* 776 S.W.2d at 165; *see also Vann v. State,* 853 S.W.2d 243, 248 (Tex.App.—Corpus Christi 1993, pet. ref'd). Further, we find that the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Clewis,* 922 S.W.2d at 129. Point of error number one is overruled.

*Sudden Passion*

By his second point of error, Ojeda argues the trial court erred in finding him guilty of murder for the death of Solis since the State never negated the element of sudden passion by sufficient evidence. Ojeda also challenges the legal and factual sufficiency of the evidence of his murder conviction.

 Ojeda correctly states that when the evidence raises the issue of sudden passion, its negation becomes an implied element of murder. *Bradley v. State,* 688 S.W.2d 847, 851 (Tex.Crim.App.1985). The issue in the instant case, however, is whether the evidence properly raised the issue of sudden passion with respect to Solis.

 "Sudden passion" is defined as passion provoked by the individual killed or another person acting with the person killed, arising at the time of the offense rather than at some earlier time. TEX.PENAL CODE ANN. § 19.02(a)(2) (Vernon 1994). Provocation, in support of a claim of sudden passion, may derive from someone other than the deceased, but this person must be someone acting with the deceased. *Havard v. State,* 800 S.W.2d 195, 215 (Tex.Crim.App.1990). The State argues that there was no evidence in the record showing that Solis provoked Ojeda or that Solis "acted with" Juarez and Cantu. The State argues that since there

was no evidence that Solis or anyone acting with Solis provoked Ojeda, it was not obligated to negate the element of sudden passion with respect to Solis's death. *See Howell v. State,* 757 S.W.2d 513, 516 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

 The record supports the State's position. No eye-witness testimony places Solis in the fighting, encouraging Juarez or Cantu, or otherwise participating in the fighting. Ojeda's own testimony does not support the allegation that Solis was personally involved in the fight or acting with Juarez and Cantu in any capacity. Likewise, Ojeda's companion Espinoza testified that Solis was not a member of the alleged group which was terrorizing Ojeda. Since the evidence was insufficient to satisfy the statutory definition of sudden passion with respect to the death of Solis, the balance of our review is left to determine whether the State successfully carried its burden of proof.

 The jury charge included an instruction on transferred intent. Specifically, the jury was instructed that:

A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different offense was committed or a different person or property was injured, harmed, or otherwise affected.

As noted, viewing the evidence in the light most favorable to the verdict, a rational jury could conclude that Ojeda intended to shoot Cantu, albeit in a state in which he was incapable of cool reflection. Intent to harm the intended victim transfers to the actual victim, *Martinez v. State,* 844 S.W.2d 279, 282 (Tex.App.—San Antonio 1992, pet. ref'd), and thus, a rational jury could conclude that Ojeda intentionally or knowingly caused the death of Solis by intending to cause serious bodily injury and committing an act clearly dangerous to human life. *See* TEX.PENAL CODE ANN. § 19.02(b)(2) (Vernon 1994). We further find that the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Clewis,* 922 S.W.2d at 129. Point of error number two is overruled.

The judgments of the trial court are affirmed.