No. 04-97-00282-CR



William A. WALDING,


Appellant


v.


The STATE of Texas
,

Appellee


From the 216th Judicial District Court, Kerr County, Texas

Trial Court No. A93-404

Honorable James C. Onion, Judge Presiding


Opinion by: Sarah B. Duncan, Justice


Sitting: Alma L. López, Justice

 Catherine Stone, Justice

 Sarah B. Duncan, Justice


Delivered and Filed: June 16, 1999


AFFIRMED


 William A. Walding appeals his conviction for voluntary manslaughter. Walding argues the
trial court erred in submitting the jury instruction on voluntary manslaughter and the evidence was
legally and factually insufficient to support the jury's verdict. We disagree.



Factual and Procedural Background


 Walding lives on a ranch owned by his close friend, Donald Luby. In July 1993, Walding
began dating Ann Schumann. During their courtship, Walding learned Schumann had recently
divorced Dr. William Allen Bussey, who was in the federal penitentiary for tax fraud. While visiting
Schumann's house, Walding noticed an abundance of weapons and books, including a book entitled
How to Kill, belonging to Bussey.

 Upon his release from prison, Bussey protested the divorce decree terms to which he had
previously agreed. Bussey claimed Schumann had stolen property from him, and he made several
attempts to take certain items he claimed were his. Bussey also telephoned Schumann and threatened
her and Walding. As a result of these threats, Schumann obtained a restraining order against Bussey.

 On the morning of October 8, 1993, while Walding and Luby were running errands,
Schumann stayed at Walding's house, noticed Bussey's truck parked outside, and called the police.
Soon after the police arrived, Walding and Luby returned from town. Walding grabbed a double-
action pistol and looked for Bussey. According to Walding, he was searching the outside of the
house when he spotted a man walking down the road toward the house. Walding further testified he
approached the man and, as the two got closer, held out his hand and asked the man, "Do you have
any identification on you?" Bussey responded, "Do you?" Walding stopped and Bussey, who was
roughly six inches taller than Walding, walked into Walding's outstretched hand. Bussey exclaimed,
"Don't put your hands on me." Walding responded that Bussey needed to wait where he was because
the police were looking for him. Then, according to Walding, Bussey held up a can of pepper spray
and sprayed him in the eyes. Walding stepped back, pulled out his gun, pointed it at Bussey, who
appeared like a silhouette in his burning eyes, and yelled "Get the f___ away from me!" Walding
then testified he saw the silhouette still appeared over him and he fired the gun repeatedly,
continuing to pull the trigger after the gun had been emptied. Walding then saw the silhouette fade
out of his view.

 Hearing the gunshots, the police rushed to the scene, where they found Walding holding the
gun in one hand and covering his eyes with the other. After Walding was ordered to drop the gun,
he was allowed to walk to a nearby water faucet to wash out his eyes. Meanwhile, the police attended
to Bussey who died at the scene. Walding walked back from the faucet and, as he passed Bussey's
dead body, exclaimed "son of a bitch."

 The autopsy revealed Bussey had been shot twice--once in the front and once in the back.
The report did not indicate which gunshot wound occurred first or which was the fatal shot. The
frontal shot went through Bussey's body at a downward angle, while the shot to his back went
through at an upward angle.

 Walding was indicted for murder, but his first trial on the murder charge resulted in a
mistrial. In the second trial, the jury was instructed on both murder and voluntary manslaughter and
found Walding guilty of voluntary manslaughter. Walding was sentenced to two years in prison.
Walding now appeals.

Charge on Voluntary Manslaughter


 In his first point of error, Walding argues the trial court erred in admitting the voluntary
manslaughter instruction because there was insufficient evidence to support its submission as a lesser
included offense. We disagree.

Scope and Standard of Review

 In deciding whether the evidence was sufficient to warrant a charge on the lesser included
offense of voluntary manslaughter, we must determine whether there is some evidence that would
permit a jury rationally to find "that the defendant killed the deceased while under the immediate
influence of sudden passion arising from adequate cause." Guerra v. State, 936 S.W.2d 46, 47 (Tex.
App.--San Antonio 1996, pet. ref'd); see Moore v. State, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998);
Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App.), cert. denied, 510 U.S. 919 (1993).
In making this determination, this court considers all of the evidence adduced at trial. Penry v. State,
903 S.W.2d 715, 755 (Tex. Crim. App.), cert. denied, 516 U.S. 977 (1995).

Discussion


 Under the penal code as it existed at the time Walding killed Bussey, a person committed the
offense of voluntary manslaughter if that person committed the offense of murder "under the
immediate influence of sudden passion arising from an adequate cause." Act of May 24, 1973, 63rd
Leg., R.S., ch. 399, § 1, sec. 19.03, 1973 Tex. Gen. Laws 883, 913, repealed by Act of May 29,
1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586. "Sudden passion" was defined
as "passion directly caused by and arising out of provocation by the individual killed or another
acting with the person killed which passion arises at the time of the offense and is not solely the
result of former provocation." Id. "Adequate cause" was "cause that would commonly produce a
degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the
mind incapable of cool reflection." Id. Thus, a lesser included instruction on voluntary manslaughter
was warranted if there was some evidence Walding was "in the throes of actual, subjective passion"
and such passion would be objectively common in the ordinary person. Lopez v. State, 716 S.W.2d
127, 129 (Tex. App.--El Paso 1986, pet. ref'd); see Brunson v. State, 764 S.W.2d 888, 894-95 (Tex.
App.--Austin 1989, pet. ref'd).

 Walding argues his testimony shows he "dispatched the deceased" with a "reflective and
deliberative response to a perceived threat." However, ample evidence indicates he was in the throes
of sudden passion. Walding himself testified he felt afraid for his life, helpless, panicked, and
terrified after Bussey sprayed him in the face with pepper spray. Moreover, Walding testified that
immediately after he was sprayed in the face, he yelled "Get the f___ away from me!," emptied the
gun almost blindly, and continued to squeeze the trigger even after he had run out of bullets. There
is thus some evidence from which a jury rationally could have found Walding acted with sudden
passion. See Moore, 969 S.W.2d at 11; Gonzales v. State, 838 S.W.2d 848, 855-56 (Tex.
App.--Houston [1st Dist.] 1992) pet. dism'd, improvidently granted, 864 S.W.2d 522 (Tex. Crim.
App. 1993); Brunson, 764 S.W.2d at 895.

 Some evidence also indicates Walding had adequate cause for his passion. Bussey, who had
earlier threatened Walding and his girlfriend, was wandering around Luby's and Walding's property,
walked into Walding, quickly produced a black canister, and sprayed Walding in the face with
pepper spray, virtually blinding him. From this evidence, a jury could rationally have found a person
of ordinary temper in the same situation would have been angered, enraged, or terrified to the point
of being incapable of cool reflection. See Brunson, 764 S.W.2d at 894-95.

 Walding further argues a jury instruction on voluntary manslaughter was inappropriate
because "there was evidence that [he] provoked the difficulty by walking one hundred and seventy
yards to confront the deceased, impeding his movement, and asking him for identification when the
police were only moments away from defusing what was obviously a volatile situation," and "where
the defendant initiates the criminal episode which leads to the victim's death and the victim was
acting in an attempt to prevent the commission of the felony by the defendant, the victim's actions
will not be viewed as constituting adequate cause from which sudden passion may arise for purposes
of voluntary manslaughter." Adanandus v. State, 866 S.W.2d 210, 231 (Tex. Crim. App. 1993), cert.
denied, 510 U.S. 1215 (1994); see also Vuong v. State, 830 S.W.2d 929, 939 (Tex. Crim. App.), cert.
denied, 506 U.S. 997 (1992); Harris v. State, 784 S.W.2d 5, 10 (Tex. Crim. App. 1989), cert. denied,
494 U.S. 1090 (1990). However, the evidence does not indicate Walding initiated a criminal episode.
Rather, it appears Bussey initiated the criminal episode by spraying Walding in the face and thus
assaulting him. According to Walding's own testimony, Bussey walked into Walding, and, before
Walding ever drew his gun or even mentioned that he had a gun, Bussey sprayed Walding in the
face. Therefore, we hold the trial court did not err in submitting an involuntary manslaughter
instruction because there was evidence from which the jury rationally could have found Walding
acted with sudden passion arising from an adequate cause.

Sufficiency of the Evidence


 In points of error two through four, Walding argues the evidence is legally and factually
insufficient to support the jury's verdict. Again, we disagree.

Standard of Review


 In reviewing the evidence for legal sufficiency, we view the evidence in the light most
favorable to the prosecution and determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319
(1979). In reviewing for factual sufficiency, however, we view all of the evidence "'without the
prism of "in the light most favorable to the verdict" and set aside the verdict only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust.'" Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996) (quoting Stone v. State, 823 S.W.2d 375, 381 (Tex.
App.--Austin 1992, pet. ref'd, untimely filed).

Discussion


 Section 9.32 of the Texas Penal Code states the rule on using deadly force in self defense:

 (a) A person is justified in using deadly force against another:


 (1) if he would be justified in using force against the other under Section
9.31;


 (2) if a reasonable person in the actor's situation would not have
retreated; and


 (3) when and to the degree he reasonably believes the deadly force is
immediately necessary:


 (A) to protect himself against the other's use or attempted use of
unlawful deadly force; or


 (B) to prevent the other's imminent commission of aggravated
kidnapping, murder, sexual assault, aggravated sexual assault,
robbery, or aggravated robbery.


Tex. Pen. Code Ann. § 9.32 (Vernon Supp. 1998). "Deadly force" means "force that is intended or
known by the actor to cause, or in the manner of its use or intended use is capable of causing, death
or serious bodily injury." Id. § 9.01(3) (Vernon 1994). "'Serious bodily injury' means bodily injury
that creates a substantial risk of death or that causes death, serious permanent disfigurement, or
protracted loss or impairment of the function of any bodily member or organ." Id. § 1.07(46).
Finally, "reasonable belief" is defined as "a belief that would be held by an ordinary and prudent man
in the same circumstances as the actor." Id. § 1.07(42).

 The evidence establishes Bussey threatened Walding and his girlfriend, and his girlfriend
subsequently obtained a restraining order against Bussey. When Walding discovered Bussey was on
the ranch property, he immediately retrieved his gun, although Walding claimed at that time he was
not afraid of Bussey. Upon finding Bussey, Walding approached him and asked him for
identification. Walding testified he was then sprayed in the face with pepper spray to the point he
began to experience pain and could only make out Bussey's silhouette. However, the evidence also
establishes the police were not far from Walding and Bussey, Walding was still able to walk after
being sprayed, and the effects of the pepper spray were only temporary. Moreover, the autopsy report
reveals one of the two bullet wounds entered Bussey's back. The evidence further shows that, while
Walding was six inches shorter than Bussey and Walding claimed Bussey loomed "over" him just
before he shot Bussey, the frontal shot traveled at a downward angle while the bullet that entered his
back traveled at an upward angle. There is also evidence Walding yelled frantically after being
sprayed, fired repeatedly at Bussey, even after the gun was emptied, and admitted at trial he was
afraid.

 Based on this evidence, a rational jury could have found Bussey was not using deadly force
when he sprayed Walding. A rational jury also could have found Walding could have safely retreated
after being sprayed. On the other hand, a rational jury could have found Walding killed Bussey under
the influence of sudden passion arising as a result of adequate cause. We therefore hold the evidence
is legally sufficient to support the jury's implied finding Walding did not act in self defense but with
sudden passion as a result of an adequate cause. See Tidmore v. State, 976 S.W.2d 724, 730 (Tex.
App.--Tyler 1998, pet. ref'd); Ojeda v. State, 945 S.W.2d 197, 200-01 (Tex. App.--San Antonio
1997, no pet.); Gonzales v. State, 942 S.W.2d 80, 83-84 (Tex. App.--Houston [1st Dist.] 1997, pet.
ref'd). Furthermore, we hold the verdict was not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. See Tidmore, 976 S.W.2d at 730; Ojeda, 945 S.W.2d at
200-01.

 We therefore overrule Walding's points of error and affirm the trial court's judgment.


 Sarah B. Duncan, Justice

DO NOT PUBLISH